# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DOUGLAS W. ATKYNS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 6:13-161 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant*. | § | |

## **REPORT AND RECOMMENDATION**

Douglas W. Atkyns ("Atkyns") seeks review of an adverse decision on his application for disability-based benefits under the Social Security Act.[1]

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither

---

[1] Atkyns applied for disability insurance benefits available under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Disability Insurance benefits provide income to insured individuals forced into involuntary, premature retirement by reason of disability. *See* 42 U.S.C. § 423(d).

can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order).

Reviewing courts also must take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## I. Background

Atkyns alleges disability due to depression, hypertensive heart disease, and left foot pain (sensory neuropathy).[2] (T. 219).[3] An evidentiary hearing was held before an administrative law judge, John P. Ramos ("ALJ Ramos"). (T. 30, 43-75). Atkyns attended and testified. (*Id.*). ALJ Ramos denied Atkyns's application. (T. 30-38). The Appeals Council denied Atkyns's request to review. (T. 1-6). Atkyns then instituted this proceeding.

## II. Commissioner's Decision[4]

ALJ Ramos found that Atkyns suffers from severe impairments consisting of "history of hypertensive heart disease and of cerebrovascular accident, and

---

[2] In his original Disability Report filed with his application, Atkyns alleged disability due to depression, diabetes, hypertension, and stroke aftermath. (T. 186).

[3] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 8).

[4] ALJ Ramos utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

depression." (T. 32). Although there was medical evidence of obesity, high blood pressure, diabetes, left foot pain, and matatarsalgia, ALJ Ramos found these conditions not to be severe impairments. (*Id.*).

ALJ Ramos found that Atkyns's impairments reduce his "residual functional capacity" such that he now retains capacity to perform only work at the light exertional level with several physical and mental limitations.[5] (T. 34-35). Atkyns, therefore, cannot perform his past relevant work as an electrician, builder, and repairer of mobile and modular homes. (T. 37).

ALJ Ramos found that Atkyns can, nevertheless, perform alternative, available work. ALJ Ramos consulted Medical–Vocational Guidelines commonly referred to as "the grids."[6] (T. 38). He concluded that a finding of "not disabled" was appropriate under the framework of section 202.14. (*Id.*). Consequently,

---

[5] ALJ Ramos assessed Atkyns's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b). He can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday, and occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He should avoid working at unprotected heights, climbing ladders, ropes and scaffolds. Mentally, the claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention/concentration for tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others and handle reasonable levels of simple, repetitive work-related stress.

(T. 35).

[6] The Medical Vocational Guidelines are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. They "take into account a claimant's RFC, as well as [his] age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

Atkyns's application was denied on the basis that his impairments do not prevent his performance of substantial gainful employment. (*Id.*).

## III. Points of Alleged Error

Atkyns 's brief articulates three "questions" stated verbatim in the note below.[7] Restated as points of error, argues that ALJ Ramos erred in failing to:

1. find left foot pain (neuropathy) and obesity as severe impairments;
2. apply regulatory factors in assessing weight to be given medical opinion evidence; and
3. apply regulatory factors in assessing Plaintiff's credibility.

(Dkt. No. 14, p. 2).

## V. Severity Finding

ALJ Ramos declined to find Atkyns's obesity and foot pain as severe impairments, stating:

> The claimant is obese, but no treating source, or even the claimant, has suggested any work-related limitations associated with obesity. ... The complaints of left foot pain and mention of matatarsalgia are probably the result of wearing shoes with insufficient arch support (Exhibit 17F, page 10) and does not represent an impairment.

(T. 34).

---

[7]
1. Is the ALJ's Determination that the Plaintiff's left foot pain (neuropathy) and obesity are not severe impairments supported by substantial evidence? Is the ALJ's decision supported by substantial evidence when he fails to cite the proper onset date;

2. Does the law judge commit reversible error by failing to properly utilize the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in assessing the weight to be given to the opinion evidence; and

3. Did the ALJ properly consider and implement the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), and SSR 96-7 in assessing the credibility of the Plaintiff.

(Dkt. No. 14, p. 2).

*A.     Atkyns's Challenge*

Atkyns argues that ALJ Ramos erred in declining to find left foot pain (neuropathy) and obesity, as severe impairments. With regard to his foot, Atkyns points to multiple instances in the record where he complained of left foot pain, and notes that a consultative examiner, Dr. Roberto Rivera, M.D., opined that "lancinating pain" in his left foot was probably the result of diabetic-neuropathy. (Dkt. No. 14, p. 7-10).

With regard to obesity, Atkyns contends that his weight gain, associated with psychotropic medication prescribed for depression, interferes with diabetes control and hypertension. (*Id.*, p. 8). He further maintains that Dr. Haswell noted that he was totally disabled from gainful employment as a result of multiple medical impairments that included obesity. (*Id.*).

*B.     Governing Principles*

"Impairments" are "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory techniques." *See* 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508. "Severe impairments" significantly limit an individual's physical or mental ability to do basic work activities.[8] 20 C.F.R. § 404.1520(c); *see also* SSR 85–28, TITLES II AND

---

[8]     The Commissioner's regulation defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," examples of which include:

> (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, at *3-4 (SSA 1985).

The phrase "significantly limits" has been judicially construed. In this Circuit, a severity inquiry is not tantamount to an ultimate determination of disability; rather it serves only to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

C.  *Application*

ALJ Ramos surely was correct when concluding that, except for one wholly conclusory statement, nothing in the medical evidence or Atkyns's testimony suggests that Atkyns's obesity causes work-related limitations. ALJ Ramos, therefore, did not err when failing to find obesity to be a severe impairment.

Although the issue is less clear, ALJ Ramos probably did not err when finding that Atkyns's foot pain is not a medically determinable impairment.[9]

---

[9] During the relevant period, foot issues noted in the medical evidence occurred between March 2010 and August 2010, when Atkyns was diagnosed with metatarsalgia and plantar fasciitis from poor shoes and not neuropathy. (T. 353, 413-18, 463, 465). Throughout the record, examination results showed normal/excellent pedal pulses (T. 353, 355, 374, 406, 463, 465), full 5/5/ monofilament testing (T. 353, 356, 362, 365), intact sensation (T. 305, 409, 415, 421); except for possible "slight []" balance issues (T. 373), ability to walk on heels and toes without difficulty (T. 372), and normal gait (T. 372). Dr. Rivera noted (when examining Atkyns's extremities) Atkyns's comment that, at times, he gets lancinating pain in the second digit of his left foot. (T. 374). Dr. Rivera speculated that it is possible he has sensory neuropathy with regard to diabetes affecting that toe. (*Id*.). Dr. Rivera, however, did not make such a diagnosis. (*Id*.). Further, neither left foot pain nor neuropathy were mentioned in Atkyns's treating physician's, Dr. David Haswell, M.D., medical source statement. (T. 435-37, 438-42).

In any event, any error was cured when ALJ Ramos found that other disorders are severe impairments, and then conducted a full, 5–step sequential analysis. ALJ Ramos expressly stated that he considered *all* of Atkyns's impairments, *including impairments that are not severe*, when making an assessment of residual functional capacity. And, importantly, his residual functional capacity finding accounts for *functional effects* of Atkyns's obesity and foot pain. He reduced Atkyns's residual functional capacity to light work with limitations designed to accommodate obesity, foot pain and imbalance. (T. 35).

Atkyns's first point of error, therefore, cannot be sustained. ALJ Ramos may or may not have erred technically when articulating his reason for finding Atkyns's left foot (neuropathy) as a non-severe impairment, but there was no substantive error affecting Atkyns's substantial rights.

## VI. Residual Functional Capacity Finding

Atkyns's Points of Error 2 and 3, while analytically distinct, both relate to and attack ALJ Ramos's core predicate finding of residual functional capacity.[10] Atkyns principally argues that this finding is infirm because ALJ Ramos did not assess credibility of medical opinions or Atkyns's subjective testimony in accordance with regulatory factors prescribed for making those assessments. (Dkt. No. 14, pp. 10-18, 18-25).

### A. *Medical Source Opinions*

ALJ Ramos considered opinion evidence from medical sources that included a treating physician (family practice/primary care), a consultative

---

[10] "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96–8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *2 (July 2, 1996).

examining physician (internal medicine), and a non-examining medical consultant[11] as follows:

*Dr. M. Fuhrman*[12]

A non-examining medical consultant, Dr. Fuhrman, advised that Atkyns can occasionally lift/carry 20 pounds, 10 pounds frequently, stand/walk for 6 hours and sit for 6 hours in an 8-hour-workday, push and pull without limitation, but should not work at heights or with dangerous heavy machinery. (T. 398-99).

ALJ Ramos gave Dr. Furhman's opinion "significant weight" due to the doctor's review of the longitudinal record and program expertise. (T. 37).

*Roberto Rivera, M.D.*

After conducting an internal medicine examination, consulting physician, Dr. Roberto Rivera, M.D., provided a medical source statement that Atkyns has no limitations to sitting, standing, walking, lifting, carrying, pushing or pulling. (T. 374). He further opined that "secondary to balance issues the claimant should probably avoid unsecured heights and other potentially dangerous situations requiring good balance where a fall might endanger him." (*Id.*).

ALJ Ramos gave "significant weight" to the opinion of Dr. Rivera "for the same reasons," *i.e.*, the doctor's review of the longitudinal record and program expertise. (T. 37).

---

[11] ALJ Ramos also considered medical source evidence addressing mental impairments; however, Atkyns's Brief does not dispute ALJ Ramos's handling of his alleged mental issues. Thus, court discussion is unnecessary.

[12] Dr. Fuhrman's opinion was provided in response to a request for medical advice by a disability analyst. Dr. Fuhrman's professional credentials are not reflected in the record before the court.

*David Haswell, M.D.*

In March and June, 2010, Dr. Haswell, Atkyns's primary care physician recorded in treatment notes that Atkyns is not employable because of multi-organ system failure associated with hypertension, hyperlipidemia, diabetes, depression, chronic back pain, and general inability to follow directions. (T. 353, 465). In March, 2011, Dr. Haswell provided a medical source statement wherein he opined that Atkyns has extreme functional limitations described in the note below. (T. 435-42).[13]

ALJ Ramos gave "little weight" to Dr. Haswell's opinions, observing that statements as to disability in his treatment notes are conclusory, and that severe limitations suggested in the medical source statement are inconsistent with other medical sources or actual examination findings. (T. 37). Further, ALJ Ramos noted that Dr. Haswell's opinions appear to be based on statements made by Atkyns rather than on test and examination results. (*Id.*).

---

[13] Dr. Haswell opined that, if working, Atkyns would be expected to be absent from work more than 3 times a month due to his impairments or need for treatment. He could occasionally lift/carry 10 pounds, could sit and stand/walk for less than two hours each in an eight-hour-workday, would need to be permitted to walk around periodically and shift positions at will from sitting, standing, and walking. Atkyns would need to take unscheduled breaks, resting 15-30 minutes. With prolonged sitting, Atkyns's knees would need to be elevated. He was limited using his lower, but not his upper extremities to push and/or pull. He never could climb, balance, crawl, or stoop and only occasionally kneel, crouch and bend and twist at the waist. Atkyns would be affected by temperature extremes and dust. He has bilateral spine pain precipitated by stress, fatigue, movement, remaining in static position and by changes in the weather. According to Dr. Haswell, Atkyns's symptoms are severe enough to constantly interfere with attention and concentration, and his ability to deal with work stress is severely limited. (T. 435-444).

1. Governing Principles

Administrative law judges must give controlling weight to opinions of "treating sources"[14] regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.[15] But, when treating source opinion swims upstream, contradicting other substantial evidence, such as opinions of other medical experts, it may not be entitled to controlling weight. *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643–44 (2d Cir. 2007) (summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Likewise, a treating physician's opinion may be discounted when it is internally inconsistent. *See Micheli v. Astrue*, 501 Fed. App'x 26, 28 (2d Cir. 2012) (summary order).

When controlling weight is not afforded to treating source opinion, or when opinions from other acceptable medical sources with respect to severity of impairments and how they affect individuals' ability to function are considered, the degree of weight to be given such evidence is determined by applying certain generic factors prescribed by regulation: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent opinion is with record as

---

[14] *See* 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[15] *See* 20 C.F.R. § 404.1527(c)(2).

a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors.[16]

   2.   Application

Atkyns lands solid body punches when attacking ALJ Ramos's weighting of the medical opinion evidence. He points out that ALJ Ramos elected to give significant weight to the opinion of non-examining medical consultant, Dr. Fuhrman, because of his program expertise and review of Atkyns's longitudinal medical record. But, when Dr. Fuhrman conducted his review, a significant number of relevant medical records were not yet in existence. Similarly, ALJ Ramos elected to give significant weight to the opinion of examining medical consultant, Dr. Rivera, "for the same reasons" given with respect to Dr. Fuhrman, yet Dr. Rivera, as an examining medical consultant, did not conduct a review of Atkyns's elongated medical history. Atkyns further complains that ALJ Ramos discredited treating physician opinion from Dr. Haswell, in part, because it was not based on test or examination results, yet credited consultative opinion from Dr. Furhman who conducted no tests or examinations.

These credibility choices are enigmatic and embarrassingly sloppy. But, in calling them to the court's attention, Atkyns does not land a knockout blow. When declining to give controlling weight to Dr. Haswell's opinion (that Atkyns is severely limited in his ability to perform various work activities and is totally disabled), ALJ Ramos neither violated the governing regulation nor exceeded bounds of his wide discretion. ALJ Ramos acknowledged Dr. Haswell as Atkyns's "family doctor." (T. 32). He documented the treatment relationship and the degree of Dr. Haswell's specialization (Factors 1, 2 and 5). (T. 32-34, 36-

---

[16] *See* 20 C.F.R. § 404.1527(c).

37). He accurately discerned that Dr. Haswell's conclusive statements in his progress notes as to disability and very limited residual functional capacity assessment are inconsistent with his actual examination findings,[17] opinions of other medical sources,[18] and documented salutary effects of medications (Factors 3, 4 and 6). (T. 37). This constitutes an adequate factor analysis in conformity with the governing regulation.

ALJ Ramos properly could afford more weight to Dr. Rivera and Dr. Fuhrman's opinions. Their opinions are consistent with the medical treatment record as a whole (Factor 4), including many clinical observations in Dr. Haswell's treatment notes. Moreover, state agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act. *See* 20 C.F.R. §§ 404.1526(c), 404.1527(f)(2). Accordingly, opinions of such consultants can be given weight, even greater weight than opinions of treating physicians when, as here, such opinions are supported by substantial evidence.

---

[17] Dr. Haswell's treatment notes were relatively benign, finding Atkyns cooperative, pleasant, articulate, and attentive; with regular heart rate and rhythm; no murmur, gallop, or rub; full 5/5/ monofilament testing; excellent pedal pulses; good plantar flexion and dorsiflexion; ability to feel compression tuning for 10 seconds bilaterally; only two findings of tenderness of lower back; no gluteal notch tenderness; dysthymic mood; clear and coherent affect; one finding of downcast eyes and another finding of better eye contact; and no suicidal ideation. (T. 353-59, 361, 364-65, 457, 460-63, 462, 465, 467). Throughout the relevant period, Atkyns's diabetes mellitus was well-controlled. (T. 356, 361-62, 459-60, 464-65, 467). In July 2007, thallium stress testing showed normal results, with Atkyns able to exercise to target heart rate without any areas of inducible ischemia, and with left ventricular ejection fraction at 66%. (T. 344-45). Chest x-rays showed a stable, benign bronchogenic cyst but were otherwise normal and showed no acute findings. (T. 295-99, 317, 412, 468-69, 471). Atkyns's lumbosacral spine x-ray also was normal. (T. 376).

[18] Examination evidence from Atkyns's trips to the emergency room demonstrated mild results, regularly showing Atkyns was alert, fully oriented, cooperative, in no acute distress (save one-time with chest pain), regular heart rate and rhythm, no murmur, normal pedal pulses, normal extremities, normal back, normal pelvis/hips, normal motor strength, intact sensation, and normal insight and judgment. (T. 270, 305, 331, 406, 409, 413, 415, 419, 421, 425, 427). Dr. Haswell's physical functional assessment also was inconsistent with Dr. Rivera's consultative internal medicine examination (T. 372-74) and Dr. Furhman's physical residual functional capacity assessment. (T. 398).

*See, e.g., Netter v. Astrue*, 272 Fed. App'x 54, 55-56 (2d Cir. 2008) (summary order) (reports of consultative and/or non-examining physicians may override opinions of treating physicians, provided they are supported by substantial evidence in the record).

In sum, ALJ Ramos's credibility choices regarding medical source opinions are not reversible for failure to apply correct principles of law.[19]

B.   *Subjective Testimony*

ALJ Ramos summarized Atkyns's testimony from the hearing as follows:

> . . . he cannot work due to depression and pain in his toe. The depression is better on the current medication. He is not engaged in social activities and does not go outside to do things. He has trouble finishing things he has started and becomes distracted. He had gained about 25 pounds due to his medication and the added weight affects him because his back hurts. He can sit for an hour or so, but then has to stand or walk and has to change position often. He stopped seeing Dr. Jones [treating psychologist] because he could not afford it, but still sees Dr. Haswell regularly.

(T. 36-37).

1.   Atkyns's Challenge

Atkyns also challenges this finding on the basis of failure to follow a prescribed protocol for evaluating subjective testimony. Atkyns cites 20 C.F.R.

---

[19] Nothing in social security jurisprudence is more firmly established than that it is the prerogative of the Commissioner, not reviewing courts, to resolve evidentiary conflicts and to appraise credibility of witnesses, including the claimant. *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator. *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.' "); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness.").

§ 404.1529(c) and SSR 96–7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (SSA July 2, 1996), and asserts that these requirements were not employed by ALJ Ramos. (Dkt. No. 14, pp. 18-25).

2. Governing Principles

Testimony from claimants regarding persistence, intensity and limiting effects of symptoms is not only relevant, but desirable. On the other hand, it is subjective and may be colored by interest in obtaining a favorable outcome. An administrative law judge must, therefore, engage in a difficult task of deciding how much weight to give claimants' subjective self-evaluations.

The Commissioner provides explicit guidance. First, a formally promulgated regulation requires consideration of seven objective factors that naturally support or impugn subjective testimony of disabling pain and other symptoms.[20] Second, an interpretive ruling directs administrative law judges to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could

---

[20] An administrative law judge must evaluate a claimant's symptoms, including pain, based on medical and other evidence, including the following factors:

(i) claimant's daily activities;
(ii) location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v) treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi) measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

See 20 C.F.R. § 404.1529(c).

reasonably be expected to produce the individual's pain or other symptoms . . . .

Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

SSR 96–7p, 1996 WL 374186, at *2. The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when an ALJ rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).[21]

### 3. Application

ALJ Ramos acknowledged all regulations and rulings that govern consideration of subjective evidence, and he expressly referenced the two-step process for considering subjective symptoms. (T. 35-36). These recitations document his awareness of and intent to apply correct legal principles.

ALJ Ramos's decision reflects that he then considered objective factors identified in the Regulation to the extent there was evidence thereof. He summarized the medical evidence regarding mental and physical issues. (T. 36-

---

[21] When an administrative law judge neglects to employ proper legal standard, a court cannot subject his credibility determination to meaningful review. *See Meadors v. Astrue*, 370 Fed. App'x 179, 184-85 (2d Cir. 2010).

37). He engaged in the two-step process as required by the applicable Ruling,[22] and articulated specific reasons for finding Atkyns's subjective complaints not fully credible, all as required by circuit law.[23] The reasons given have evidentiary support.

In sum, ALJ Ramos's credibility choices were reached and explained sufficiently, and are not reversible for failure to apply correct principles of law or for lack of substantial evidence.

### VII. Bias

ALJ Ramos inaccurately recited that Atkyns claimed an amended onset-of-disability date as November 23, 2008. The correct date was one month earlier, October 23, 2008. (T. 30, 46, 219). Atkyns argues that this denotes a

---

[22] After summarizing the evidence addressing Atkyns's alleged physical and mental limitations, ALJ Ramos engaged in the two-step process, finding:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible.

(T. 37).

[23] ALJ Ramos reasoned as follows:

> The claimant has a good work history, but his credibility is diminished because he quit his long-time job due to differences with a supervisor, and there is a lack of contemporaneous medical treatment, and a lack of any statement by a treating source that he was unable to continue in his job for medical reasons.
>
> * * *
>
> The claimant certainly has depression, but the symptoms improve on medication. The claimant is not socializing, but it appears to be because he want to avoid seeing his estranged wife, not due to limitations imposed by depression.

(T. 37).

"haphazard" review of the file and "implies a predisposition on the part of the ALJ" to rule against Atkyns.[24]

This contention is pure supposition unsupported by any statements made by ALJ Ramos in his decision or other evidence. Because ALJ Ramos performed a thorough and careful review of the evidence of record, no bias has been shown. *Whitfield v. Astrue*, 476 Fed. App'x 408, 409 (2d Cir. 2012) (summary order) (citing *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 119–20 (2d Cir. 1999) (explaining that, in order to show that an ALJ's bias resulted in the denial of a fair hearing, a claimant must show that the ALJ exhibited a "deep-seated favoritism or antagonism that would make a fair judgment impossible") (alteration omitted) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed.2d 474 (1994))). Further, Atkyns neither argues nor shows that evidence from a one-month discrepancy (November 23, 2008) was different or more favorable than remaining evidence from the relevant period (October 23, 2008). ALJ Ramos's error in this regard is, therefore, harmless.

## VIII. Recommendation

Atkyns's request to remand this action should be DENIED. The Commissioner's decision should be AFFIRMED.

---

[24] Atkyns argues that an amendment of his disability onset date to October 2008 (after his fiftieth birthday) would enable him to have grid rules applicable to a person "closely approaching advanced age" applied rather than rules applicable to a "younger individual." Atkyns espouses that ALJ Ramos "may have drawn an erroneous adverse inference prejudicial to the Plaintiff" emanating from Atkyns's election to claim an amended onset date. (Dkt. No. 14, pp. 9-10).

## IX. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the  15   day of      May      2014.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge